# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Dr. David Daugherty and Dr. Barbara Daugherty, | No. 24-cv-498 (KMM/DLM) |
|     Plaintiffs/Counter Defendants, | |
| v. | **ORDER** |
| Travelers Commercial Insurance Company, | |
|     Defendant/Counter Claimant. | |

Dr. David Daugherty and Dr. Barbara Daugherty brought this action against Travelers Commercial Insurance Company for alleged breaches of their homeowner's policy after a hailstorm damaged the clay tile roof on their home and detached garage. The Daughertys allege that the policy requires Travelers to pay to replace their roof, including installation of all new clay tiles, because testing of several tiles from the roof failed industry testing standards applicable to severe weather environments like Minnesota's. Travelers, on the other hand, has only agreed to pay for a "spot repair" of the roof, a process which involves removal and reinstallation of those existing clay tiles that were undamaged by the storm, rather than replacing the roof covering using all new tiles. The parties disagree about whether the applicable residential building code allows for such a spot repair—the code both authorizes reinstallation of undamaged clay tiles and requires clay tiles to comply with the industry standard that Plaintiffs' existing tiles failed.

After the Daughertys filed their complaint, Travelers counterclaimed seeking a declaratory judgment that the building code allows it to use the spot-repair approach regardless of the Plaintiffs' tiles' non-compliance with the industry standard. This matter is now before the Court on Travelers' motion for partial summary judgment in its favor on its counterclaim for declaratory relief. For the reasons that follow, the Court concludes that the relevant building code does not allow Travelers to reinstall existing clay tiles that do not comply with the testing standard. Therefore, Travelers is not entitled to summary judgment in its favor.

## BACKGROUND

### I.    Relevant Building Code Provisions

Because Travelers' motion for summary judgment asks the Court to resolve a disputed interpretation of a municipal building code, the Court begins with the relevant provisions for context. The Minnesota State Building Code "governs the construction, reconstruction, alteration, repair, and use of buildings and other structures to which the code is applicable." Minn. Stat. § 326B.101. "The purpose of [the State Building Code] is to establish minimum requirements to safeguard the public health, safety, and general welfare through structural strength, means of egress facilities, stability, sanitation, adequate light and ventilation, energy conservation, and safety to life and property from fire and other hazards attributed to the built environment. . . ." Minn. R. 1300.0030. The Minnesota Commissioner of Labor and Industry is required to establish "a code of standards for the construction, reconstruction, alteration, and repair of buildings. . . ." Minn. Stat. § 326B.106, subd. 1. Pursuant to administrative rules promulgated by the Commissioner,

the State Building Code consists of several "chapters[,] . . . including the standards they adopt by reference." Minn. R. 1300.0020.

One of the chapters adopted by the State Building Code is the Minnesota Residential Code, which is found in chapter 1309 of Minnesota's administrative rules. Minn. R. 1300.0050, ¶ H. In turn, Chapter 1309 incorporates "the 2018 edition of the International Residential Code ('IRC') as promulgated by the International Code Council, Inc. ('ICC')" into the State Building Code. Minn. R. 1309.0010. *Builders Ass'n of Minnesota v. City of St. Paul*, 819 N.W.2d 172, 178 (Minn. Ct. App. 2012) ("The International Building and Residential Codes have both been incorporated into the state building code by reference. . . . The term 'state building code' therefore refers to the International Building Code and the International Residential Code, subject to the exceptions, amendments, and qualifications to those codes as set forth in the administrative rules.").

The Daughertys live in Rochester, Minnesota, and the State Building Code provides for municipal enforcement of the code's provisions. *See* Minn. Stat. § 326B.121, subd. 2. Rochester adopted the most recent version of the Minnesota Residential Code, effective March 31, 2020.[1] As a result, the IRC's provisions comprise the relevant portions of Rochester's residential building code, including those relating to repair and replacement of roofing on single family dwellings.

---

[1] City of Rochester, *Building Code & Licensing*, https://www.rochestermn.gov/departments/community-development/construction-development-resources/commercial-development/building-code-licensing#:~:text=The%20City%20of%20Rochester%20adopted,MN%20Residential%20Code%20is%20enforced.&text=What%20are%20building%20codes%3F (last visited Dec. 6, 2024); *see also* Kuipers Decl., Exs. 14–15.

"Roof repair" and "roof replacement" are defined terms under the IRC. Roof repair is the "[r]econstruction or renewal of any part of an existing roof for the purposes of its maintenance." IRC § R202 ("roof repair").[2] Roof replacement refers to "[t]he process of removing the existing *roof covering*, repairing any damaged substrate and installing a new *roof covering*." *Id.* ("roof replacement") (italics in original). A "roof covering" is the "covering applied to the roof deck for weather resistance, fire classification or appearance." *Id.* ("roof covering"). Examples of roof coverings include asphalt shingles and clay tiles.

Chapter 9 of the IRC "addresses the design and construction of roof assemblies," which "includes the roof deck, substrate or thermal barrier, insulation, vapor retarder and roof covering." IRC, Ch. 9, User Note. Particularly important here is the section of the IRC governing "Reinstallation of materials," which states:

> **R908.5 Reinstallation of materials.**
>
> Existing . . . clay . . . tile shall be permitted for reinstallation, except that damaged, cracked or broken . . . tile shall not be reinstalled. Any existing flashings, edgings, outlets, vents or similar devices that are a part of the assembly shall be replaced where rusted, damaged or deteriorated. Aggregate surfacing materials shall not be reinstalled.

IRC § R908.5 ("the reinstallation provision").

In addition, all roof coverings must "be applied in accordance with the applicable provisions of [IRC § R905] and the manufacturer's installation instructions." ICC § R905.1. This includes, specifically, installation of clay roofing tiles. IRC § R905.3. One

---

[2] The ICC's rules are available online at ICC Digital Codes, *2020 Minn. Residential Code*, https://codes.iccsafe.org/content/MNRC2020P1 (last visited Dec. 6, 2024).

of the provisions within IRC § R905 requires clay roof tile to comply with a standard established by the American Society of Testing and Materials ("ASTM"). It states that "clay roof tile shall comply with ASTM C1167." IRC § R905.3.4.

ASTM C1167 is a standard specification for "clay tiles intended for use as roof covering where durability and appearance are required to provide a weather-resistant surface of specified design." Kuipers Decl., Ex. 5, ASTM C1167 ¶ 1.1. "Three grades of tile having various degrees of resistance to weathering are covered in this specification," ASTM C1167 ¶ 1.5, with Grade 1 tiles being those that are compatible with severe weather environments, like Minnesota. Testing according to the ASTM C1167 specification measures the roofing tiles' average breakage strength and water absorption. *See id.*, Ex. 4, Ludowici Testing Report. For tiles to meet the Grade 1 standard, the average water absorption for five tiles must be less than six percent with no individual tile greater than eight percent. *Id.*[3] The average breakage strength for five tiles with a twelve-inch span, after soaking in water for twenty-four hours must be greater than 225 pounds of force, with no individual tile less than 200 pounds of force. *Id.*

This dispute in this case arises at the intersection between the IRC's clay tile reinstallation provision (§ R908.5) and the provision requiring clay tiles to comply with ASTM C1167 (§ R905.3.4). The latter says that clay tiles must comply with the ASTM specification. The former authorizes reinstallation of clay tiles that are undamaged but says nothing about compliance with the ASTM specification.

---

[3] Tiles fall into Grade 2 or Grade 3 when the average water absorption for five tiles is greater than that acceptable for Grade 1 tiles. *See* Ludowici Testing Report.

## II.    Factual Background

As noted, the Daughertys own a home in Rochester, Minnesota, which they purchased in the 1990s. Their home was covered under a Travelers' homeowner's policy at all times relevant to this case. In 2010, the Daughertys replaced their existing wood shake roof with a Ludowici[4] clay tile roof. In May 2022, a hailstorm damaged some of the roof tiles, though others were unharmed. The Daughertys submitted a claim pursuant to their Travelers policy, seeking to have the roof replaced.

Under the policy, Travelers is required to pay the cost to repair or replace a roof damaged by a hailstorm. The policy provides that Travelers is required to pay the least of the following amounts for a covered loss: (1) the applicable policy limits, (2) the replacement cost using similar materials, or (3) the necessary amount actually spent to repair or replace the damaged building. Kuipers Decl., Ex. 1, Policy, Conditions ¶ 3.b.(1)(a)–(c). Travelers is also required to cover increased repair and replacement costs incurred due to a need to comply with an ordinance or law governing renovation or repair of a covered building. *Id.*, Policy, Conditions ¶ 3.b. In other words, there is no dispute here that the policy covers damage to the Daughertys' roof and that Travelers' obligation includes additional costs to repair or replace damaged property that are required to bring the Daughertys' home into compliance with the Rochester residential building code.

The Daughertys asked Travelers to cover the cost of completely replacing the roof with a new Ludowici clay tile roof, and their contractor estimated the cost to do so would

---

[4] Ludowici is a well-known manufacturer of clay roofing tiles.

be over $760,000. Kuipers Decl., Ex. 3. Meanwhile, Travelers concluded that the undamaged tiles could be removed from the Daughertys' home and reinstalled, while the damaged tiles would be replaced with new tiles. This so-called "spot repair" approach to fixing the roof on the Daughertys' home and detached garage would involve removing all the clay tiles, installing new flashings and underlayment, and reusing approximately 80 percent of the old tile that was not damaged, while installing 20 percent new tile for the existing tile that was damaged by hail. *See* Kuipers Decl., Ex. 6 (describing the spot-repair process). Travelers estimated the replacement cost value (RCV) for such a spot repair would be just over $440,000. Kuipers Dec., Ex. 2. There is no dispute that in February 2023, Travelers paid the Daughertys $408,725.76, which Travelers agrees that it owes under the policy, minus the applicable deductible. But the Daughertys disagreed that Travelers' payment to cover the costs of the "spot repair" met Travelers' indemnification responsibilities under the policy.

The Daughertys' contractor, Joe Rosso, pulled a random sample of five tiles from the roof and sent them to Ludowici for testing. Specifically, Rosso asked Ludowici to test the sample tiles for compliance with ASTM C1167 and the specifications for Grade 1 tiles. Ludowici's testing showed that the samples Rosso pulled did not meet those requirements.

*See* Ludowici Testing Report.[5] On March 6, 2023, Rosso informed Travelers of the results of Ludowici's testing. Kuipers Decl., Ex. 4.

Because the parties disagreed about the effect of the Ludowici ASTM testing on the question of whether Travelers could move forward with a spot repair, they sought input from the City of Rochester's "Plans Examiner," Mike Thedens, an official with responsibility for applying the residential building code. In March 2023, Rosso shared the Ludowici testing results with Thedens and asked if Travelers' plan to "remove all tile from the house and detached garage[,] put in new flashings and underlayment[,] and reuse 80% of the old tile" alongside "20% new tile" would be code compliant. Kuipers Decl., Ex. 6. Thedens told Rosso that the same ASTM standard was applicable in 2010, when the clay tile roof was originally installed at the Daughertys' home, and it remained applicable. *Id.* Thedens said that Ludowici testing results from Rosso indicated that the tiles on the Daughertys' roof did not meet the required standard. *Id.* Rosso then shared Thedens' message with Travelers and stated that "reuse of the tile does not meet building code." *Id.*

---

[5] One of the five tested tiles had a breaking strength of less than 200 pounds of force following a 24-hour soak in water, and the average breaking strength was less than 225 pounds of force. In addition, three of the tiles showed water absorption above the maximum eight percent for any individual tile, and the average water absorption of all five tiles exceeded the maximum average of six percent. Ludowici Testing Report. Some of Travelers' filings in connection with its motion for partial summary judgment call into question the adequacy of Mr. Rosso's documentation of the tiles sent in for testing. *See* Kuipers Decl., Ex. 11 at 6 ¶ 3 (discussing weathering of the tiles and lack of documentation of the sample tiles' condition); *see also* Countercl. ¶ 6 (alleging that the clay tiles Rosso provided to Ludowici had been in the elements for 13 years before they were sent for testing and that no photographs were taken of the sample tiles documenting their condition). Nevertheless, at the hearing on the partial summary judgment motion, Travelers conceded that the existing tiles on the Daughertys' roof do not comply with ASTM C1167's specifications for Grade 1 tiles, so the Court treats that fact as undisputed.

Several months later, a Travelers consultant, Phil Simon, spoke to Thedens about the Daughertys' roof and the issue of the spot repair method's compliance with the code. Kuipers Decl., Ex. 8. Simon met with Thedens on November 13, 2023, and the following day, Simon emailed Thedens to confirm their discussion. In the November 14th email, Simon indicated that Thedens agreed that the Rochester building department would approve "a spot repair of damaged clay roof tiles and flashing at the Daugherty home," which "would be done by purchasing new manufacturer/tested tiles and reinstalling undamaged roof tile pieces from the home." *Id.* Thedens agreed with Simon's summary of their conversation about the roof repair by email. *Id.*

However, less than a week later, Thedens offered a different analysis. On November 20, 2023, Thedens wrote to Simon and stated that he had "changed [his] code interpretation of reroofing the clay tile roof." Kuipers Decl., Ex. 9 at TRAV000497. Thedens explained:

> A SFD [single family dwelling] in Rochester built in the 1920's has an existing clay tile roof. I was informed the clay tile roof was installed in 2010 to replace the existing wood shingled roof at that time. Clay tile roofs in 2010 under the 2007 Mn Residential Building Code Section R905.3 were required to meet ASTM C1167. In the past 1 – 2 years there was storm damage to the clay tile on this roof.
>
> The current 2020 Mn Residential Building Code, reroofing section R908 of the 2020 Mn Residential Building Code states in Section R908.5 – Reinstallation of Materials the following - Existing slate, clay or cement tile shall be permitted for reinstallation, except that damaged, cracked or broken slate or tile shall not be reinstalled. Any existing flashings, edgings, outlets, vents or similar devices that are a part of the assembly shall be replaced where rusted, damaged or deteriorated. Aggregate surfacing materials shall not be reinstalled.

> It is my understanding the existing clay tile was sent to an approved testing agency to confirm the existing clay tile installed in 2010 met ASTM C1167. The results from the approved testing agency stated the existing clay tile installed in 2010 failed to meet ASTM C1167. The current 2020 Mn Residential Building Code Section 905.3.4 states clay tile shall meet ASTM C1167. So it appears the clay tile was required to meet the same ASTM C1167 Standard in 2010 as of today in 2023.
>
> Based on this the clay tile originally installed back in 2010 was required to meet ASTM C1167. Even though reroofing section R908.5 would allow the reinstallation of existing undamaged clay tile, in this case it has been determined by testing the existing clay tile failed to meet ASTM C1167 as required under the 2007 Residential Building Code back in 2010. Because of this the existing undamaged clay tile would not be allowed to be reinstalled under the current 2020 Mn Residential Building Code.

*Id.*, Ex. 9.[6]

In December 2023, Thedens provided additional explanation for the code requirements regarding the Daughertys' roof. *Id.*, Ex. 12. Thedens explained that in 2010, the Daughertys' completely replaced a previously installed "wood shake roof" with a clay tile roof, but their contractor installed used tiles. *Id.* Because the roof was completely

---

[6] Pursuant to the policy, when Travelers and the Daughertys disagree as to the "amount of loss," either can demand an appraisal in which a panel will determine the amount of loss. Policy, Conditions ¶ 7. After Travelers received Thedens' November 20, 2023 message, the appraisal process was put on hold. The appraisal umpire concluded that the code dispute was a legal issue the appraisal panel could not decide, and it would need to be resolved by a court prior to any appraisal taking place. Kuipers Decl., Ex. 10. In their complaint, the Daughertys allege that Travelers breached its obligations under the policy to participate in an appraisal and sought a judgment compelling Travelers to do so. Compl. ¶ 13; *id.*, Prayer for Relief ¶ 2. At the hearing on the Defendant's partial motion for summary judgment, the parties agreed that the appraisal will go forward once the Court issues this Order. There is currently no dispute before the Court regarding Plaintiffs' claim that Travelers breached the policy in connection with the appraisal process, and therefore, the Court offers no opinion on the merits of that claim at this time.

replaced in 2010, Thedens said that the clay tiles installed at that time were required to meet ASTM C1167, but Ludowici's recent testing of the sample tiles received from Rosso showed that they failed to meet the ASTM specification. *Id.* As a result, Thedens stated that "the clay tile installed in 2010 was not an approved clay tile roof covering," and using existing clay tiles that were not acceptable for the 2010 installation to spot repair the Daughertys' roof now "would not be acceptable for code approval." *Id.*

After Plaintiffs brought this lawsuit as a state court action, Travelers removed the matter to federal court and served an Answer and Counterclaim. Dkt. 2. For its Counterclaim, Travelers alleged that Plaintiffs' contractor, Mr. Rosso, "created a dispute relating to the [building] code application" when he removed tiles and sent them to the manufacturer Ludowici for ASTM C1167 testing. Countercl. ¶ 5. Travelers alleged that ASTM C1167 is a standard applicable to new tiles and does not apply to existing tiles and disputed Thedens' interpretation and application of the building code. *Id.* ¶¶ 8–10. Based on these and other allegations, Travelers sought a declaratory judgment "from the Court interpreting the applicable building codes, and stating that the applicable building codes allow Travelers to perform spot repair, and do not require Travelers to replace Plaintiffs' roof." *Id.* ¶ 29. Travelers then brought its motion seeking summary judgment in its favor on its declaratory judgment counterclaim.

## DISCUSSION

### I.    Legal Standard

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Dowden v. Cornerstone Nat'l Ins. Co.*, 11 F.4th 866, 872 (8th Cir. 2021). The moving party must demonstrate that the material facts are undisputed. *Celotex*, 477 U.S. at 322. A fact is "material" only if its resolution could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the moving party properly supports a motion for summary judgment, the party opposing summary judgment may not rest on mere allegations or denials, but must show, through the presentation of admissible evidence, that specific facts exist creating a genuine issue for trial. *Id.* at 256; *McGowen, Hurst, Clark & Smith, P.C. v. Com. Bank*, 11 F.4th 702, 710 (8th Cir. 2021). A dispute of fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Courts must view the inferences to be drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Irvin v. Richardson*, 20 F.4th 1199 (8th Cir. 2021). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . ." *Nunn v. Noodles & Co.*, 674 F.3d 910, 914 (8th Cir. 2012) (quoting *Anderson*, 477 U.S. at 255).

## II.   Analysis

The question before the Court is whether the building code allows Travelers to reinstall existing, undamaged clay tiles from the Daughertys' roof even if those tiles do not comply with the ASTM C1167 specification. For the reasons explained below, the Court

finds that the building code does not permit reinstallation of undamaged, but non-compliant clay tiles.

Resolution of this issue requires interpretation of the Rochester building code, which incorporates the IRC's provisions. "The interpretation of an existing ordinance is a question of law for the court." *City of St. Cloud v. Schaefer*, No. A23-1880, 2024 WL 4586397, at *3 (Minn. Ct. App. Oct. 28, 2024) (quoting *RDNT, LLC v. City of Bloomington*, 861 N.W.2d 71, 75 (Minn. 2015)). Courts apply familiar rules of statutory interpretation to the construction of a municipal ordinance. *Id.* (citing *Eagle Lake of Becker Cnty. Lake Ass'n v. Becker Cnty. Bd. of Comm'rs*, 738 N.W.2d 788, 792 (Minn. Ct. App. 2007)). Courts give the words in the ordinance their plain and ordinary meaning, *City of Morris v. Sax Inv., Inc.*, 749 N.W.2d 1, 9 (Minn. 2008), and construe sections of an ordinance that involve "the same subject matter . . . together," *Chanhassen Estates Residents Ass'n v. City of Chanhassen*, 342 N.W.2d 335, 339 (Minn. 1984).

When an ordinance's language is plain and unambiguous, that language controls. *Schaefer*, 2024 WL 4586397, at *3. If, however, the ordinance is ambiguous, a court must endeavor "to ascertain and effectuate the intention of the legislature," and "presume that the legislature intended the entire section to be 'effective and certain,' and not lead to an absurd result." *Cannon v. Minneapolis Police Dep't*, 783 N.W.2d 182, 194 (Minn. Ct. App. 2010) (quoting Minn. Stat. §§ 645.16, 645.17). An ordinance is ambiguous when its language is "subject to more than one reasonable interpretation." *Eagle Lake*, 738 N.W.2d at 792.

Travelers argues that the plain language of the reinstallation provision (IRC § R908.5) expressly allows for reinstallation of the Daughertys' existing, undamaged clay tile. Travelers points out that there is nothing in the reinstallation provision itself that says the existing clay tiles that may be reinstalled must also comply with the ASTM C1167 standard. Travelers argues that the testing standard only applies to installation of new tile, and as a result, its proposed spot repair is code compliant even if the existing tile fail to conform to the ASTM specification. Plaintiffs argue that the IRC does not allow Travelers to reinstall any existing, non-compliant clay tiles. They argue that the IRC § R905.3 requires installation of clay tile to comply with the provisions of § R905 generally, and § 905.3.4 plainly states, without qualification, that clay roof tile must comply with ASTM C1167. Essentially, Plaintiffs contend that reinstallation of clay tiles can only be permitted where the existing, undamaged reinstallation tiles comply with ASTM C1167.[7]

The Court finds that Plaintiffs have the better argument. The Minnesota Residential Code incorporates the IRC's provisions, including those in IRC Chapter 9 governing roof assemblies. Section R905 includes requirements that are applicable to the installation of clay tile. IRC § R905.1 ("Roof coverings shall be applied in accordance with the applicable provisions of [IRC § R905] and the manufacturer's installation instructions."); IRC § R905.3 ("The installation of clay and concrete tile shall comply with the provisions of this section."). The IRC expressly states the standard that must be met by clay roof tile—

_____

[7] Neither side cites Minnesota appellate cases, nor any other persuasive authority addressing the code interpretation issue presented by Defendant's motion, and the Court has not located any caselaw providing guidance on the question presented here.

"Clay roof tile shall comply with ASTM C1167." IRC § R905.3.4; *see also* IRC § R904.3 ("Roof covering materials shall conform to the applicable standards listed in [Chapter 9]."). On its face, this language plainly applies to all clay roof tile used in residential structures, whether they are placed on new buildings, used in a roof replacement, or installed as part of a roof repair.

The code's requirement that clay roof tiles must comply with ASTM C1167 can be harmonized with the IRC's reinstallation provision (§ R908.5). The ASTM compliance requirement applies to all clay tile roof coverings, exactly as one would expect from its plain, unqualified language. Meanwhile, existing clay tile "shall be permitted for reinstallation" pursuant to the reinstallation provision, so long as that the tiles to be reused are neither "damaged, cracked or broken." IRC § R908.5. That means that existing tiles may be reinstalled, consistent with both § R908.5 and § R905.3.4, when they (1) are not damaged, cracked, or broken; and (2) comply with ASTM C1167. Such a reading gives full effect to each of these sections. *See* Minn. Stat. § 645.17 (providing that in "ascertaining the intent of the legislature, the courts may" presume that "the legislature intends the entire statute to be effective and certain").

Travelers' arguments to the contrary do not persuade the Court. Travelers contends that IRC § R908.5 unambiguously authorizes reinstallation of any existing tile that is undamaged, and it asserts that the ASTM compliance standard applies only to new tile. In essence, Travelers suggests that the reinstallation provision is an exception to the ASTM C1167 compliance requirement. The Court disagrees for at least two reasons. First, the Court notes that IRC § 905.3.4 does not specify that only new clay roof tiles must comply

with that ASTM specification. Nor is such language found in the reinstallation provision. And no other building code provision cited by Travelers explicitly states or implies that the ASTM standard is limited to new tile. To the extent Travelers' expert opines on the meaning of the building code by saying that the ASTM standard does not apply to reinstallation of existing tile, *see* Kuipers Decl., Ex. 11, that is simply an interpretation of the meaning of the ordinance, which is an issue left to the Court and on which expert opinion is not permitted. *See S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003) (explaining that "expert testimony on legal matters is not admissible" and concluding that expert testimony about whether the plaintiff had violated FAA regulations was inadmissible).

Second, the relevant code provisions contain no language clearly establishing an exception to the otherwise IRC's straightforward command that all clay roof tile must comply with ASTM C1167. Missing entirely from the terms of both IRC §§ 905.3.4 and 908.5 are any explicit pronouncements limiting the applicability of the ASTM compliance requirement. Neither the drafters of the IRC, nor the State of Minnesota when it adopted the IRC, nor the City of Rochester when it adopted the Minnesota Residential Code, created such an express exception. The drafters did, in fact, place unambiguous exceptions into the text of the IRC elsewhere—other provisions within Chapter 9 explicitly state the applicable exceptions—which indicates that any intent for reinstallation of clay tiles to operate as an exception to the ASTM standard required by § R905.3.4 would have been similarly established. The Court will not rewrite the Minnesota Residential Code under the guise of statutory interpretation.

Travelers suggests that the International Code Counsel's commentary on the reinstallation provisions offers "additional clarification on what is permitted under this rule." Def.'s Mem. 9 (Doc. 22). However, that commentary simply rephrases what the reinstallation provision itself already conveys: "Unless damaged, existing tile of cement, slate or clay may be reused." Kuipers Decl., Ex. 11. This commentary does not say that clay tiles may be reused even though they do not comply with ASTM C1167. Therefore, the commentary reveals no legislative intent to create an exception to the requirement that "clay roof tile shall comply with ASTM C1167." IRC § R905.3.4.

For these reasons, the Court concludes that under the Rochester building code, Travelers cannot reinstall existing tile from the Daughertys' roof that does not comply with ASTM C1167. That interpretation is consistent with the policy and purpose of the Minnesota State Building Code. The State Building Code establishes "requirements to safeguard the public health, safety, and general welfare through structural strength, . . . stability, . . . energy conservation, and safety to life and property from fire and other hazards attributable to the built enforcement. . . ." Minn. R. 1300.0030; *see also* Minn. Stat. § 326B.101. Allowing reinstallation of clay roofing tiles that do not conform to the Grade 1 severe weather specifications of ASTM C1167 would not advance the structural integrity and safety of the Daughertys' property.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT** Defendants' motion for summary judgment is denied. Defendant's declaratory judgment counterclaim is dismissed with prejudice.

Date: December 11, 2024                    *s/Katherine Menendez*
                                           Katherine Menendez
                                           United States District Judge